UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA HIGH-SPEED RAIL AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants. | No. 2:25-cv-02004-DAD-CKD<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 12) |

This matter came before the court on November 17, 2025, for hearing on defendants' motion to dismiss plaintiff's complaint. (Doc. No. 12.) California Deputy Attorney General Sharon Louise O'Grady appeared by video for plaintiff. U.S. Department of Justice Trial Attorney Kathryn Barragan appeared by video for defendants. For the reasons explained below, the court will deny defendants' motion to dismiss.

**BACKGROUND**

On July 17, 2025, plaintiff California High-Speed Rail Authority ("plaintiff" or "CHSRA") filed its operative complaint against defendants United States Department of Transportation ("DOT"), Sean Duffy, Federal Railroad Administration ("FRA"), and Drew Feeley (collectively, "defendants"), challenging the FRA's decision to terminate more than $4

/////

1   billion in federal grant funding for the California high-speed rail program.  (Doc. No. 1.)
2   Plaintiff's complaint alleges the following:
3           Plaintiff and defendant FRA have collaborated for more than 15 years on the high-speed
4   rail program, and California has committed more than $22 billion to it.  (*Id.* at ¶ 2.)  After initial
5   federal grant awards in 2009 and 2010 totaling approximately $3.5 billion, federal grant funding
6   ceased for several years.  (*Id.*)  That changed in 2022.  (*Id.*)  Between August 2022 and January
7   2025, defendant FRA awarded additional grants totaling approximately $3.4 billion to plaintiff
8   for the section of the project in the Central Valley extending from Merced to Bakersfield.  (*Id.*)
9   The 171-mile Merced-to-Bakersfield section, also called the Early Operating Segment ("EOS"),
10  will be the first part of the system to commence revenue service, carrying passengers between
11  Bakersfield, Fresno, Madera, and Merced.  (*Id.*)
12          President Donald J. Trump has long expressed personal animus towards the California
13  high-speed rail program, and during his first administration, defendant FRA terminated a
14  cooperative agreement granting $929 million to California for the project ("FY10 Cooperative
15  Agreement").  (*Id.* at ¶¶ 4–5.)  In a now-settled action, the State of California and plaintiff sued.
16  (*Id.* at ¶ 6.)  The lawsuit was ultimately resolved through a June 2021 settlement agreement re-
17  obligating the full amount of the FY10 Cooperative Agreement and amending some of its terms.
18  (*Id.*)  Since then, defendant FRA and plaintiff have entered into new cooperative agreements to
19  help fund construction of the EOS.  (*Id.* at ¶ 7.)  The largest of them, the Federal-State Partnership
20  ("FSP") Cooperative Agreement, was executed in September 2024.  (*Id.*)  Under this agreement,
21  defendant FRA obligated $2.4 billion to the project, and the agreement provides for an additional
22  $680 million that defendant FRA has not yet obligated.  (*Id.*)
23          Defendant FRA completed its last annual monitoring review of the high-speed rail project
24  on October 28, 2024, and at that time made no findings for which corrective measures were
25  needed.  (*Id.* at ¶ 8.)  Just days after President Trump's second term began, however, the President
26  began to attack the project once again.  (*Id.* at ¶ 9.)  On February 20, newly confirmed U.S.
27  Department of Transportation Secretary Sean Duffy stated that, in response to President Trump's
28  call for an investigation, he would direct FRA to initiate a review of plaintiff's compliance with

1  the terms of its federal funding agreements.  (*Id.* at ¶ 10.)  The same day, the Chief Counsel for

2  defendant FRA advised plaintiff by letter that defendant FRA intended to initiate a compliance

3  review of the FY10 Cooperative Agreement and the FSP Cooperative Agreement.  (*Id.*)

4        On June 4, 2025, defendant FRA sent plaintiff a Notice of Proposed Determination stating

5  its intent to terminate the FY10 Cooperative Agreement and the FSP Cooperative Agreement,

6  which together total over $4 billion, attaching a Compliance Review Report to the notice.  (*Id.* at

7  ¶ 11.)  The notice explained that plaintiff would not meet the requirement that it initiate revenue

8  service on the EOS by December 31, 2033.  (*Id.*)  The notice also stated that plaintiff had no

9  credible plan to address an approximately $7 billion shortfall in funding needed to complete the

10  EOS.  (*Id.*)  On June 11, 2025, plaintiff provided an initial response disputing the grounds for

11  termination provided in the notice, and on July 7, 2025 a more detailed supplemental response.

12  (*Id.* at ¶ 12.)  On July 16, 2025, defendant FRA notified plaintiff that it was terminating the

13  Cooperative Agreements effective that day based on the conclusion that plaintiff "will not be able

14  to deliver operation of a Merced-to-Bakersfield by the end of 2033."  (*Id.* at ¶ 14.)

15        Based on the above, plaintiff asserts a single claim for arbitrary and capricious agency

16  action in violation of the Administrative Procedure Act ("APA").  (*Id.* at ¶¶ 123–30.)

17        On September 22, 2025, defendants filed their motion to dismiss plaintiff's complaint.

18  (Doc. No. 12.)  On October 17, 2025, plaintiff filed its opposition to defendants' motion and a

19  related request for judicial notice.  (Doc. Nos. 26, 27.)  On November 3, 2025, defendants filed

20  their reply thereto.  (Doc. No. 36.)  On November 13, 2025, plaintiff filed a notice of

21  supplemental authority regarding defendants' motion.  (Doc. No. 40.)

22  **LEGAL STANDARD**

23        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

24  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

25  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

26  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

27  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

28  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

3

1  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
2  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
3  *Iqbal*, 556 U.S. 662, 678 (2009).
4      In determining whether a complaint states a claim on which relief may be granted, the
5  court accepts as true the allegations in the complaint and construes the allegations in the light
6  most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However,
7  the court need not assume the truth of legal conclusions cast in the form of factual allegations.
8  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not
9  require detailed factual allegations, "it demands more than an unadorned, the-defendant-
10 unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers
11 mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."
12 *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements
13 of a cause of action, supported by mere conclusory statements, do not suffice."). It is
14 inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the
15 defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*
16 *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).
17 In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material
18 that is properly submitted as part of the complaint, documents that are not physically attached to
19 the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies
20 on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th
21 Cir. 2001).

## ANALYSIS

**A.  Jurisdiction**

24     Defendants argue that plaintiff's claim effectively challenges the termination of the
25 parties' contractual agreements and seeks continued performance under those agreements, and as
26 such plaintiff's claim cannot lie in federal district court. (Doc. No. 12-1 at 20.) Instead,
27 defendant contends, the Court of Federal Claims has exclusive jurisdiction over such a claim
28 under the Tucker Act. (*Id.*) In opposition, plaintiff argues that this court has jurisdiction over its

claim because the agreements at issue here are cooperative agreements, which are not contracts under the Tucker Act. (Doc. No. 26 at 15.) Even if the cooperative agreements are deemed to be enforceable contracts for purposes of Tucker Act jurisdiction, plaintiff argues that this court has jurisdiction because plaintiff is not asserting a claim for breach of contract and does not seek an order requiring the payment of any money. (*Id.* at 18–23.) In reply, defendants argue that cooperative agreements are contracts, particularly here, where the consideration requirement is satisfied by conditions placed on plaintiff by the agreements. (Doc. No. 36 at 4–8.) Further, they argue that plaintiff's claim depends on the terms of the agreement, and that plaintiff seeks a contractual remedy in the form of grant monies as they come due. (*Id.* at 8–13.)

As the Ninth Circuit recently explained:

> The Tucker Act gives the Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Because this statute "grants consent to suit" and "impliedly forbids" declaratory and injunctive relief, it precludes bringing contract claims against the United States in federal district court pursuant to the APA's waiver of sovereign immunity. 5 U.S.C. § 702. *See Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645–46 (9th Cir. 1998). In other words, for contract claims against the United States seeking more than $10,000, the Tucker Act confers exclusive jurisdiction on the Court of Federal Claims. *Id.*
>
> The Tucker Act " 'impliedly forbid[s]' an APA action seeking injunctive and declaratory relief only if that action is a 'disguised' breach-of-contract claim." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). To determine whether a claim is a disguised breach-of-contract claim, we apply the *Megapulse* test, which considers: (1) the source of the rights upon which the plaintiff bases its claims and (2) the type of relief sought (or appropriate). *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994). If the plaintiff's rights and remedies, as alleged, "are *statutorily* or *constitutionally* based, then district[ ] courts have jurisdiction," but if those rights and remedies "are *contractually based* then only the Court of Federal Claims does." *United Aeronautical*, 80 F.4th at 1026 (emphasis in original).

/////

/////

/////

/////

5

*Thakur v. Trump*, 148 F.4th 1096, 1103 (9th Cir. 2025).[1]

### 1. The Source of the Rights Upon Which Plaintiff Bases Its Claim

Turning to the *Megapulse* test, the court first considers the source of the rights upon which plaintiff bases its claim. *Id.* "The Tucker Act does not bar an APA action if the plaintiff's rights and remedies, as alleged, are noncontractual—even if it is inevitable that the government will raise a contract provision as a defense." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023).

Plaintiff argues that its claim is based on defendant's failure to comply with both the APA and their own regulations. (Doc. No. 26 at 19.) Pursuant to the APA, plaintiff argues that defendants' stated reason for terminating the cooperative agreements was pretextual, unsupported, and a departure from settled policy such that the decision to terminate was arbitrary and capricious. (Doc. No. 15 at 20–27.) Under similar circumstances, the Ninth Circuit has held that the source of the rights upon which the plaintiff bases its claims is non-contractual.

---

[1] In its first argument in opposition to the pending motion to dismiss plaintiff contends that the Tucker Act does not strip this court of jurisdiction over its claim in this case because, as a preliminary matter, the relevant agreements are cooperative agreements, which lack the consideration necessary to be considered contracts under the Tucker Act. (Doc. No. 26 at 15.) There is a split of authority on this issue. Some courts have found that only agreements that confer a direct and tangible benefit on the government can qualify as contracts under the Tucker Act, and because cooperative agreements do not, they never qualify as contracts under the Tucker Act. *See, e.g.*, *Trauma Serv. Grp., Ltd. v. United States*, 33 Fed. Cl. 426, 429 (1995), *aff'd sub nom. Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997); *St. Bernard Par. Gov't v. United States*, 134 Fed. Cl. 730, 735 (2017), *aff'd,* 916 F.3d 987 (Fed. Cir. 2019); *Washington v. U.S. Dep't of Commerce, et al.*, No. 25-cv-01507-MJP, 2025 WL 2978822, at *5 (W.D. Wash. Oct. 22, 2025); *Pacito v. Trump*, 772 F. Supp. 3d 1204, 1215 (W.D. Wash. 2025) (on appeal); *Am. Near E. Refugee Aid v. United States Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 132–33 (D.D.C. 2023). Other courts have found that a direct and tangible benefit is not required, and as such cooperative agreements may qualify as contracts even though they do not confer a direct and tangible benefit on the government. *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 461 (2019) (citing *Trauma Serv.*, 104 F.3d at 1326); *see also id.* at 462 (collecting cases); *Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 419 (1995). The court need not and does not resolve this split of authority because, as explained below, even assuming both that cooperative agreements may qualify as contracts under the Tucker Act and the particular cooperative agreements at issue in the instant action do qualify as contracts under the Tucker Act, pursuant to the two-part *Megapulse* test, the court still concludes that plaintiff's asserted claim is not a disguised breach-of-contract claim subject to the exclusive jurisdiction of the Court of Federal Claims.

> Plaintiffs filed suit on behalf of a proposed class of similarly situated UC researchers against sixteen agencies, alleging that the mass termination of grants violated separation of powers, the First and Fifth Amendments of the Constitution, and the Administrative Procedure Act (APA).
>
> . . .
>
> Beginning with "the source of the rights upon which the plaintiff bases its claims," *id.*, Plaintiffs contend that the form termination notices, which did not state any reason specific to the recipient for termination of their grants, violated their right to be free from arbitrary and capricious agency action. *See* 5 U.S.C. § 706(2)(A). The source of that right is statutory, and it "existed prior to and apart from rights created under the contract." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (citation modified). Plaintiffs' APA claim is not premised on any rights derived from their grants or any purported contract and thus resolving the claim does not require analyzing the terms of any grant or contract. Rather, Plaintiffs' APA argument is that the agencies, by sending form termination notices, failed to provide a reasoned explanation for their actions. *See* § 706(2)(A); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515, 129 S. Ct. 1800, 173 L.Ed.2d 738 (2009). Contractual rights are not at issue.

*Thakur*, 148 F.4th at 1101, 1103.

Regarding defendants' regulations, plaintiff argues that those regulations direct defendants to take intermediary steps before termination, steps defendants did not take here. (Doc. No. 15 at 26–27.) Defendants argue that because these regulations are incorporated into the cooperative agreements at issue, any appeal to these regulations is contractually based. (Doc. No. 36 at 8.) However, at the hearing on defendants' motion, plaintiff clarified, and defendants did not deny, that the regulations at issue would apply even if they were not incorporated into the cooperative agreements. Accordingly, the court is not persuaded by defendants' argument in this regard. *See Launch Alaska v. Dep't of the Navy, Off. of Naval Rsch.*, No. 3:25-cv-00141-GMS, 2025 WL 2223744, at *3 (D. Alaska Aug. 5, 2025) ("ONR's Grant Appeal Authority examined the text of federal regulation § 200.341(a), not the terms of the grant, to determine whether the grant officer's termination notice of Launch Alaska's grant was sufficient.").

/////

/////

/////

    2. <u>The Type of Relief Sought or Appropriate</u>

As for the type of relief sought or appropriate, plaintiff seeks an order setting aside the termination decision. (Doc. No. 1 at 34.) The Ninth Circuit recently found that such relief is not properly characterized as money damages.

> Plaintiffs sought an order vacating the grant terminations and a preliminary injunction enjoining the agencies from giving effect to those terminations.
>
> . . .
>
> As for the "type of relief sought," *United Aeronautical*, 80 F.4th at 1026, Plaintiffs sought—and the district court awarded—vacatur of the termination notices and reinstatement of the terminated grants. These well-established APA remedies are not contractual in nature. *See, e.g., Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025) (noting that "vacatur and remand is the default remedy under the APA").
>
> The government insists that Plaintiffs seek specific performance pursuant to the grant agreements, an "explicitly contractual remedy." *See Crowley*, 38 F.4th at 1107. Thus, the government asserts that this part of the *Megapulse* test "boils down to whether [Plaintiffs] effectively seek[ ] to attain monetary damages." *Id.*
>
> Defendants overlook that even if Plaintiffs' requested relief has the eventual effect of requiring the government to make payments pursuant to the grants, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.' " *Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S. Ct. 2722, 101 L.Ed.2d 749 (1988); *see also Dep't of Educ. v. California*, 604 U.S. 650, 145 S. Ct. 966, 968, 221 L.Ed.2d 515 (2025) (per curiam). Plaintiffs' request to effectively undo the grant terminations and return Plaintiffs to the status quo does not seek performance of a contractual obligation. *Cf. Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1167 (9th Cir. 2015) (noting that "one cannot specifically perform something that is not a term in the contract"). Instead, Plaintiffs' APA claim seeks to ensure that the agencies' course of conduct complies with federal law. *See Bowen*, 487 U.S. at 905, 108 S. Ct. 2722. At this preliminary stage, it appears that any payments due under the grants are "a mere by-product" of the district court's "primary function of reviewing" the government's interpretation of its statutory obligations pursuant to the APA. *Id.* at 910, 108 S. Ct. 2722.

*Thakur*, 148 F.4th at 1101, 1103–04.

In *National Institutes of Health v. American Public Health Association*, a twelve sentence opinion, the Supreme Court granted an application to stay pending appeal. 145 S. Ct. 2658

8

1  (2025) (*per curiam*) ("*NIH*"). The court stated that "[t]he application is granted as to the District

2  Court's judgments vacating the Government's termination of various research-related grants"

3  because "[t]he Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not

4  provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related

5  grants or to order relief designed to enforce any '"obligation to pay money"' pursuant to those

6  grants." *Id.*

7      *NIH* appears to suggest that vacating a grant termination is designed to enforce an

8  obligation to pay money. However, as one district court in this circuit has stated in addressing the

9  application of the brief opinion in *NIH* to the case before it:

10  > There is no reasoning in the decision to apply to the case before the
11  > Court, and no means of determining whether it has any application
12  > to the unique facts at issue in this case. Without any explication of
13  > the relevant facts and how they fit within the relevant legal
14  > framework, the per curiam decision does not support Defendants'
15  > position.

14  *Washington v. U.S Dep't of Commerce, et al.*, No. 25-cv-01507-MJP, 2025 WL 2978822, at *5

15  (W.D. Wash. Oct. 22, 2025).²

16      In fact, looking beyond the Supreme Court's brief opinion in *NIH* to the procedural

17  posture of that case, the district court "'vacated' the grant terminations *and ordered the*

18  *Government to pay plaintiffs sums due under the agreement 'forthwith.'*" 145 S. Ct. at 2661

19  (Barrett, J., concurring) (emphasis added). In contrast here, as in *Thakur*, plaintiff seeks relief in

20  /////

21  /////

22  /////

---

² In another interim order, the Supreme Court has noted that "[a]lthough our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable jurisdiction in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). At the same time, "[i]t is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases." *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020). "As [the Supreme] Court has repeatedly explained in the context of summary affirmances, '"unexplained"' decisions '"settl[e] the issues for the parties, [but they are] not to be read as a renunciation by [the Supreme] Court of doctrines previously announced in [its] opinions."'" *Id.* at 104–05.

the form of an order setting aside the termination decisions, not an order to pay plaintiffs the sums due under the cooperative agreements "forthwith."[3] (Doc. No. 1 at 34); *see also Washington v. United States Dep't of Educ.*, No. 25-7157, 2025 WL 3486895, at *2 (9th Cir. Dec. 4, 2025)[4] ("But in . . . *NIH*, those plaintiffs explicitly sought, and the district courts ordered, the immediate payment of past-due grant obligations and the continued payment of ongoing obligations based on midyear grant terminations.").

For the reasons explained above, consideration of both *Megapulse* factors support the court's conclusion that plaintiff's claim is not a disguised breach of contract claim. Accordingly, this court has jurisdiction over plaintiff's claim.

**B.   Whether Termination of the Cooperative Agreements is Committed to Agency Discretion**

Next, defendants argue that the agency's decision to terminate the cooperative agreements is committed to agency discretion and is not reviewable. (Doc. No. 12-1 at 26–28.) Plaintiff responds by arguing that termination of the cooperative agreements is not committed to agency discretion because defendants' regulations and policies provide a meaningful standard, as do defendants' own stated reasons for terminating the cooperative agreements. (Doc. No. 26 at 26.)

/////

---

[3] To the extent the short opinion in *NIH* might be seen as casting some conceivable doubt on *Thakur*, a recent Ninth Circuit interim decision provides support for finding that *Thakur*'s reasoning survives. After the opinion in *NIH* was issued, the Ninth Circuit denied a federal government motion for a stay pending appeal and directed the very relief plaintiff requests here, reinstatement of cooperative agreements pursuant to which funding is provided. *See Pacito v. Trump*, 152 F.4th 1082, 1088 (9th Cir. 2025). Although the lower court's order and the appellant's briefs addressed whether the Tucker Act stripped the district court of jurisdiction, the Ninth Circuit's order did not specifically address jurisdiction. Still, the Ninth Circuit's finding in that case that the federal "government is not likely to prevail on at least one of plaintiffs' challenges under the APA"—meaning that the plaintiff is likely to succeed on at least one of its challenges under the APA—certainly suggests that the federal government was found not likely to succeed on its jurisdictional challenge, since a successful jurisdiction challenge would render any of the plaintiff's challenges under the APA unavailing. *Id.* at 1087; *see also United States v. Bowman*, 679 F.2d 798, 799 (9th Cir. 1982) ("We affirm because we conclude that the Supreme Court implicitly resolved the jurisdictional question against appellant's position[.]").

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

In the recent *Thakur* decision, the Ninth Circuit addressed the applicable legal standards as follows:

> The APA creates a "basic presumption of judicial review," rebutted only if the relevant statute precludes review or if the action is "committed to agency discretion by law." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22–23, 139 S. Ct. 361, 202 L.Ed.2d 269 (2018) (citations omitted); 5 U.S.C. § 701(a)(2). An action is "committed to agency discretion by law" only in "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser*, 586 U.S. at 23, 139 S. Ct. 361 (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191, 113 S. Ct. 2024, 124 L.Ed.2d 101 (1993)). "Even where statutory language grants an agency unfettered discretion, its decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751 (9th Cir. 2021) (quoting *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015)).

148 F.4th at 1105.

In the same decision, the Ninth Circuit determined that where federal agencies terminate grants, uniform grant regulations adopted across the federal government "provide a meaningful standard by which courts may review the agencies' exercise of discretion." *Id.* at 1105–06. Because defendants' decision to terminate plaintiff's cooperative agreements is subject to those same regulations, among others, it is likewise reviewable. *See* 2 C.F.R. § 200.340(a) ("The Federal award may be terminated in part or its entirety as follows: (1) By the Federal agency or pass-through entity if the recipient or subrecipient fails to comply with the terms and conditions of the Federal award; . . . (4) By the Federal agency or pass-through entity pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities."); *see also Washington*, 2025 WL 2978822, at *9 ("Here, the regulations and Guidance set a meaningful standard of review against which to measure the Award terminations."); *Am. Ass'n of Univ. Professors v. Trump, et al.*, No. 25-cv-07864-RFL, 2025 WL 3187762, at *35 (N.D. Cal. Nov. 14, 2025) ("2 C.F.R. § 200.340 which Defendants argue is the authority for the Funding Cancellation—provides a meaningful standard for the Court to apply.").

/////

Because this court has jurisdiction to review plaintiff's claim asserted in this action, and defendants' decision is not committed to exclusive agency discretion by law, the court will deny defendants' motion to dismiss.[5]

## CONCLUSION

For the reasons explained above,

1. Defendants' motion to dismiss (Doc. No. 12) is DENIED; and
2. Defendants shall LODGE the administrative record within thirty (30) days of the date of entry of this order.

IT IS SO ORDERED.

Dated: **December 9, 2025**

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[5] Because the court need not consider the documents which plaintiff requests that judicial notice be taken of (Doc. No. 27) in resolving defendants' pending motion to dismiss, plaintiff's request for judicial notice is denied as having been rendered moot. *See Langer v. Music City Hotel LP*, No. 21-cv-04159-PJH, 2021 WL 5919825, at *5 (N.D. Cal. Dec. 15, 2021) ("The court does not consider this exhibit in deciding this motion, and it therefore denies as moot the request for judicial notice of the exhibit.").

12